PEOPLE ex rel. MOLLER et al. v. O'DONNELL et al., Tax Com'rs.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. TAXATION—DISTRICTS—CITY OF NEW YORK.
     Under Tax Law, § 2 (Laws 1896, p. 796, c. 908), defining a tax district as a political subdivision of the state having a board of assessors authorized to assess property for state and county taxes, and Greater New York Charter, § 886 (Laws 1901; p. 377, c. 466, as amended by Laws 1904, p. 965, c. 375), vesting in the board of taxes and assessments of the city of New

York all the rights and duties formerly devolved upon it and upon the department of assessments in the city of Brooklyn, and upon like departments in other municipal corporations consolidated with the city of New York, the city of Greater New York constitutes a single tax district.

**2. SAME—TRUST ESTATES.**

The boroughs of the city of New York in which trustees under a will reside, and not the borough in which the will was admitted to probate, are the proper districts for the assessment of the personal tax against the estate.

[Ed. Note.—For cases in point, see vol. 45, Cent. Dig. Taxation, § 445.]

**3. SAME—ASSESSMENTS AGAINST TRUSTEES—PRESUMPTIONS.**

Where a personal property assessment levied in the city of New York against the executors of an estate is levied against the several executors in their respective boroughs, it will be presumed that the assessment against each executor is equal only to the proportion of the estate assessable to him.

**4. SAME.**

S., residing in Manhattan, and M., residing in the Bronx, were executors and trustees under the will of G., a resident of Manhattan. A personal property tax was levied in Manhattan against S. as executor, etc. On the assessment rolls of the Bronx for the same year appeared under the heading "Personal Estate Assessed to" the words "M. and S. as executors and trustees estate of G." Under the heading "Residence" appeared the residence of M., and the entry was in the proper alphabetical position for M., and not for S. It was not shown that the estate did not equal the aggregate of both assessments. *Held,* that the Bronx assessment would be deemed one against M., and not against S., and would not be deemed double taxation.

**5. SAME—DESIGNATION OF TAXPAYER—CLERICAL ERROR.**

A personal property assessment against the trustees of the estate of one Godwin is not rendered void by designating the decedent as "Goodwin."

**6. SAME—PLACE OF ASSESSMENT—RESIDENCE OF EXECUTORS.**

Although the city of Greater New York constitutes but a single tax district, yet, in view of the fact that it is located in several counties, and it is the legislative policy to assess the personal property of the residents of each county to meet the expenses of that county and of the state, and that Greater New York Charter, § 894 (Laws 1901, p. 380, c. 466), requires that there shall be a separate assessment roll in each of the boroughs, upon which the residents of the borough shall be assessed for their personal property, and makes provision for transferring an assessment erroneously made in one borough against the resident of another to the appropriate assessment roll in the borough of his residence—in which case, however, a further notice and hearing is required before the tax is valid—trust property in the hands of several executors residing in different boroughs should be assessed as if the trustees resided in different tax districts and were assessed by different boards of assessors, and should not be assessed together in the borough in which the will was admitted to probate.

O'Brien, P. J., and Ingraham, J., dissent.

Appeal from Special Term, New York County.

Certiorari by the people, on the relation of Emma L. Moller and another, as executors and trustees under the last will of Joseph H. Godwin, deceased, against Frank A. O'Donnell and others, as commissioners of taxes and assessments of the city of New York. From an order denying a motion to quash the writ, respondents appeal. Reversed.

The following is the opinion of the lower court (Leventritt, J.):

This is an application to quash a writ of certiorari, and depends for its disposition on the determination of the question whether the city of New York

is or is not a single tax district. According to the petition, Joseph H. Godwin died in New York county August 9, 1903. Letters testamentary on his estate were issued on September 24, 1903, to the relators, Emma L. Moller, a resident of the borough of the Bronx, and Isaac P. Smith, a resident of the borough of Manhattan. On the assessment roll for the borough of Manhattan for the year 1904 appeared an assessment in the following form: "Index, 1541; personal estate assessed to, Smith, Isaac P., as executor and trustee of J. H. Godwin; residence, 45 W. 76; value of personal estate, $150,000; tax, $2,270.13." This tax was paid by the relators in time to get the benefit of the rebate allowed by law, and they received a receipt in full from the receiver of taxes. The petition further shows that on the complete assessment roll for the borough of the Bronx for the same year appears this entry: "Index, 76; personal estate assessed to, Moller, Emma L., and Isaac P. Smith, as executors and trustees estate of Joseph H. Goodwin; residence, Kingsbridge avenue and Two Hundred and Thirtieth street; value of personal estate, $150,000; tax, $2,270.13." It is alleged that it was the intention of the tax board to place upon the relators, as executors and trustees of the estate of Joseph H. Godwin, a further assessment in addition to that imposed by the roll for Manhattan borough. The additional assessment is asserted to be illegal and void on the ground that the estate is assessed twice in the same year in an entire tax district. The corporation counsel seeks to sustain the assessment on the ground that the city of New York is made up of five separate tax districts. The error in the description of the estate as that of Goodwin instead of Godwin may be disregarded. The entry in the first column of the first part of the assessment roll (Tax Law, § 21, subd. 1; Laws 1896, p. 803, c. 908) must be substantially accurate, so as to enable a reasonably intelligent person, searching the roll for an assessment against him, to identify the name as intended for him, or the estate as the one for which he is acting in a representative capacity. Rumsey, Taxation, pp. 27, 179, and cases cited.

The serious question arises under sections 2 and 8 of the tax law, and certain sections of the Greater New York charter. Section 2 of the tax law defines a tax district as follows: "Tax district as used in this chapter means a political subdivision of the state having a board of assessors authorized to assess property therein for state and county taxes." It is to be noted that the use of this term as defined was original in the tax law (Laws 1896, p. 796, c. 908). Section 8 of the law provides: "Every person shall be taxed in the tax district where he resides when the assessment for taxation is made for all personal property owned by him or under his control as * * * executor. * * * Where taxable personal property is in the possession or under the control of two or more * * * executors * * * residing in different tax districts, each shall be taxed for an equal portion of the value of such property so held by them." If the borough of the Bronx and the borough of Manhattan can be treated as separate tax districts, the Bronx assessment, which is the sole one here involved, can be sustained on the theory of the presumption of law in favor of the legality of an official act; that is to say, it would be presumed that the commissioners had acted according to law, and had imposed an assessment only upon one-half of the property held by the relators. People ex rel. Kellogg v. Wells, 92 N. Y. Supp. 5. "The burden would be on the relators to overcome this presumption by proof." Id. Under the tax law and the charter, however, the borough of the Bronx cannot be considered as a separate tax district. It is not a political subdivision of the state. It has not a board of assessors authorized to assess property therein for state and county purposes. The political subdivision is the city of New York. The department of taxes and assessments is one of the city departments, and it is the head of that department that is called the "Board of Taxes and Assessments." Charter, §§ 884, 885. There is no separate board for each of the five boroughs constituting the city, and it is not even incumbent that each borough be represented on the board, although no borough except that of Manhattan may have more than one resident as a member. Charter, § 885. The charter provides for a complete devolution of the rights, powers, and duties of the several tax boards of the various municipal corporations consolidated by the act on the "board of taxes and assessments in

the city of New York," and authorized this single board to adopt a common seal. Section 886. It vests in the new board all the functions devolved by law upon the tax departments of the various municipalities. People ex rel. Thomson v. Feitner, 168 N. Y. 441, 448, 61 N. E. 763. The main office of the board is in the borough of Manhattan; branch offices are maintained in the boroughs of Brooklyn, Queens, Richmond, and Bronx, and the books and records are required to be maintained in such offices as may be most convenient to the taxpayers. Charter, § 890. The branch offices are declared in law to be part of the main office. Id. The deputy tax assessors assigned to the various branches and drawn from various boroughs act under the direction of the board, are in no sense independent officers, and have no power to assess, revise, or cancel. That power is centralized in the board, acting for the entire city. It alone assesses. People ex rel. Thomson v. Feitner, supra. The charter and the construction it has thus received clearly make the city of New York, which is a political subdivision of the state having a single board of assessors authorized to assess property, a tax district, within the meaning of section 2 of the tax law.

The defendants invoke various sections of the charter to show that each borough is a separate tax district. Thus they instance the making of the original assessments by the deputy tax commissioners (section 889); the maintenance of the branch offices in the various boroughs, and the keeping of the books and records there for the convenience of the taxpayers (section 890); the hearing of applications for the reduction of taxes at the various borough offices (section 898); and especially that part of section 894 which reads: "If at any time prior to the first day of May in any year it shall appear to the tax commissioners that a person assessed for taxation or personal estate on the books or rolls of one borough should have been assessed therefor on the books or rolls of another borough, they shall forthwith cause the assessment to be canceled and a new assessment to be made on the proper books or rolls, and within five days thereafter shall cause written notice of the new assessment to be mailed to such person at his last known residence or business address within the city of New York, and an affidavit of the mailing of such notice to be filed in the main office." I think none of these provisions, taken singly or together, sustains the claim made. They relate primarily to matters of procedure, and, while they may affect the validity of a tax where directly involved, do not affect the jurisdictional question as to what is the tax district. They are not in conflict with the theory of a single centralized body acting for a single political subdivision. Though the original, tentative assessment is to be primarily made by the deputies, they act only "under the direction of the board of taxes and assessments" (section 889), and their valuations are merely advisory. The keeping of the records in the borough branch offices is, by the terms of the section, for the convenience of the taxpayers. Section 890. Though application for correction may be made at the branches, the deputies designated to act get their authority by a special appointment from the board, have no power to act on the applications, but must simply reduce the testimony to writing, and transmit it to the board, with their recommendations. Section 898. Nor does the provision quoted from section 894 require a construction that each borough is a separate tax district. Its purpose is in line with those provisions which contemplate that notice shall come to the taxpayer of an assessment against his real or personal property. Ordinarily no formal notice is required to be sent to a taxpayer of an assessment. The sending of a written notice is a voluntary act. The opening of the books in the boroughs where they are required to be kept, with an opportunity for inspection, is the notice contemplated. The law makes adequate provision that the taxpayer may know by examination at the designated place whether his property has been assessed. If he finds no assessment, he has the right to assume that there is none. Therefore, if by error his name and his property are erroneously entered on the books or rolls of a borough other than the one in which they should have been entered, the law requires a cancellation and the entry of a new assessment on the proper books, coupled with actual written notice, so that the person may not be deprived of his right to apply for a correction. If no actual notice is given, the assessment is void, not because the person

has not been assessed in the tax district in which he resides, but because he has not had the notice contemplated by law, because the procedure required by the charter, which was intended to bring knowledge of the assessment home to him (i. e., entry of the assessment in the proper borough) has not been complied with. The direction "to cancel" and to make a "new assessment" in section 894 does not, to my mind, permit the argument that the use of these words indicates an assessment in the wrong tax district, as that word is used in the state law. The procedure commanded by statute not having been followed, and there being an erroneous entry on one roll, it must of necessity be "canceled" before it can properly be entered on another. The use of the words "new assessment" does not mean an assessment de novo. No further proceedings are required by the deputies, or by the board toward fixing the amount of the assessment. That remains. The tax commissioners are directed "forthwith" to cause the new assessment to be made on the proper books or rolls. It requires simply a transcription from the wrong to the right roll. It does not require a new assessment to be made. It requires a new assessment on the proper books. There being no entry on the right books, any thereon will be a new one. The effect of the whole provision is to direct, not the institution of a further original proceeding, but simply a transcription, a transference.

As a result of this review of the section of the charter and the tax law, I am of the opinion that on principle the city of New York is a single tax district. This view also finds support in authority. In McHarg v. Gaus, 169 N. Y. 19, 61 N. E. 987, the court held, in a case involving taxation in the city of Albany, that chapter 86 of the Laws of 1850, providing for the assessment and collection of taxes in that city, should be construed in harmony with the tax law. The act of 1850 required taxation to be made by wards, and the preparation of a separate assessment roll for each ward. The tax law required that each person be taxed in the tax district where he resides. Construing the sections together, the court held that the city of Albany being a political subdivision of the state, having a board of assessors authorized to assess property therein for state and county taxes, an assessment on the roll of a ward other than the ward of the person's residence was not a jurisdictional defect, although it might invalidate the assessment if it resulted in a failure of notice to the person taxed. "Thus the city of Albany is a single tax district, under the general law, and the direction in the act of 1850 to 'prepare an assessment roll for each of the wards in the said city' is a detail of procedure in exercising jurisdiction, namely, to assess every taxable person in the tax district; a detail not necessary to acquiring or retaining jurisdiction; important, and its omission or irregular or erroneous execution no doubt fatal, where it results in a failure to give the person assessed that timely notice which due process of law exacts, but not so where, notwithstanding the imperfection, error, or irregularity, such person does receive timely notice and acts upon it." At page 26 of 169 N. Y., page 988 of 61 N. E. So in the case at bar the city of New York is a tax district under the general law, and the directions as to the books to be kept and the matters to be done in the several boroughs are mere details of procedure. Where omission to comply with the statutory requirements or to make the correction in a proper case, required by section 894 of the charter, results in a failure to give the person assessed the notice contemplated, then the assessment may be bad; but the city of New York, as a whole, does not remain the less a single tax district.

It follows from this discussion that, the city of New York being a single tax district, there was no authority to make the second assessment complained of. The requirement of section 8 of the tax law is that each person shall be taxed in the tax district where he resides for all the personal property under his control as executor, and it is only where the property is under the control of two or more executors, residing in different tax districts, that an assessment against each for the portion held is justified. I conclude, therefore, that the writ should not be quashed.

Motion to quash denied.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

E. Crosby Kindleberger, for appellants.

Howard R. Bayne, for respondent.

LAUGHLIN, J.    The petition upon which the writ issued shows that petitioners Emma L. Moller and Isaac P. Smith are the executors and trustees under the last will and testament of Joseph H. Godwin, deceased; that the decedent was a resident of the county of New York, and died on the 9th day of August, 1903; that his will was duly admitted to probate by the surrogate of the county of New York and letters testamentary were issued to the petitioners on the 24th day of September, 1903, whereupon they qualified and entered upon the discharge of their duties; that upon the completed assessment roll for the borough of Manhattan for the year 1904, under index No. 15,041, Isaac P. Smith, as executor and trustee of Joseph H. Godwin, residence 45 West Seventy-Sixth street, was assessed $2,270.13 on a valuation of personal estate of $150,-000; that the residence thus given in the assessment roll was his correct residence; that on the assessment roll for the borough of the Bronx for the same year, under index No. 76, in the column under the heading "Personal Estate Assessed to," appears "Moller, Emma L. and Isaac P. Smith as executors and trustees estate of Joseph H. Godwin" and under the heading "Residence" appears "Kingsbridge Ave. and 230th Street," which was the correct residence of said Emma L. Moller, but not of said Smith, and this assessment was on personal property of a valuation of $150,000, and the tax was precisely the same in amount as that against Smith as executor and trustee in the borough of Manhattan.    There is no allegation that the personal property left by the decedent in the hands of his representatives at the time these assessments were levied was not more than the aggregate of both, or upwards of $300,000 in value. The proceeding appears to have been instituted upon the theory that the tax levied in the borough of Manhattan was valid and it has been paid, but that the tax levied in the borough of the Bronx was void upon three grounds:    First, that as the city of Greater New York constitutes but one tax district, and the personal representatives resided in different boroughs, the estate was taxable in the borough in which the will was admitted to probate; second, that it constitutes double taxation against the estate, and at least as against the executor and trustee Smith; and, third, that it is invalid on account of the surname of the decedent being spelled "Goodwin" instead of "Godwin."    We agree with the learned judge at Special Term that by virtue of the provisions of section 2 of the tax law (chapter 908, p. 796, Laws 1896) and section 886 of the Greater New York charter (Laws 1901, p. 377, c. 466) as amended by chapter 375, p. 965, Laws of 1904, the city of Greater New York constitutes but a single tax district, for the reason that it is a subdivision of the state, having a board of assessors authorized to assess property for state and county taxes, and that its board of taxes and assessment was vested with authority to assess both real and personal property for such purpose throughout the greater city.

Assuming for the present that, notwithstanding the fact that the entire city constitutes but a single tax district, still individuals and representatives of estates must be assessed for personal property in the borough in which they reside, and that, where there are two representatives of an estate residing in different boroughs, each must be assessed in the borough in which he resides for one-half the trust estate, the provisions of law by which the assessment rolls prepared by the deputies in the respective boroughs do not become-binding until approved by the board of taxes and assessments, who sit and act for all the boroughs, are important in determining the questions presented by the appeal. There is no foundation for the view that the tax against the executors and trustees should be levied in the borough wherein the will was admitted to probate. No such criterion for determining the question is found in the statute. As has been seen, it is conceded that the tax against Smith as executor and trustee in the borough of Manhattan was valid; and it is clear, under the authorities, that, if the executrix resided in another tax district, she could and should have been assessed there for one-half the estate. People ex rel. Beaman v. Feitner, 168 N. Y. 360, 61 N. E. 280; People ex rel. Kellogg v. Wells, 101 App. Div. 600, 92 N. Y. Supp. 5. It is likewise clear, under the authorities, that in such case it would be presumed that the assessment against each executor or trustee was only one-half the value of the estate, and it would be incumbent on the relator to show the contrary. People ex rel. Kellogg v. Wells, supra. We have also recently decided that an assessment in form against two trustees, one of whom resided in the tax district wherein the assessment was levied, and the other of whom was a nonresident of the state, was valid and enforcible, and it would be presumed that although the assessment, in form, was against both, it was only intended to assess the resident, and not for the value of the entire estate, but only one-half. People ex rel. Kellogg v. Wells, supra. If it had been the intention of the deputy commissioner for the Bronx who made the assessment in the first instance, or of the board in confirming it, to assess Smith as well as the executrix, it is fair to assume that he would have assessed him separately, as required by the law, in the alphabetical order of his surname, and giving his residence, and for one-half the trust estate. Instead, we find the assessment against the executrix in the alphabetical order of her surname, and with a residence given which is hers, and not his. If it was the duty of the board having charge of the confirmation of the assessments in all the boroughs to assess Smith as executor and trustee in Manhattan, and Moller as executrix and trustee in the Bronx, each for one-half the value of the trust estate, then, it not appearing that the aggregate trust estate did not equal or exceed $300,000, it may justly be presumed that they were aware of their duty, and of the facts shown by the respective rolls of Manhattan and the Bronx, and intended to levy the assessments accordingly. The addition of the executor's name in the assessment in the Bronx may therefore be treated as having been inserted with a view to more accurately describing the estate on account of which the executrix

was assessed. It is manifest that it was not intended as an assessment against the executor and trustee Smith, and that there was not double taxation.

There is no merit in the contention that the assessment is rendered void by the extra "o" in the surname of the decedent. That is a mere clerical error, which may be disregarded as not prejudicial. McLean v. Horn (Sup.) 17 N. Y. Supp. 119; People ex rel. U. S. Trust Co. v. Parker (Sup.) 21 N. Y. Supp. 704.

The remaining question is whether, on account of the city of Greater New York being a single tax district, a valid tax for personal property may be imposed in any borough upon a nonresident of the borough, who, however, resides in some other borough, without waiver, acquiescence, or estoppel on his part. I am of opinion that the question must be answered in the negative. If all the boroughs were in a single county, there might be force in the contention that it was immaterial in which borough the assessment was levied, but such is not the case; and it is manifest that the Legislature intended, in accordance with the long-settled policy of the state, to assess the residents of each county in that county for their personal property, to the end that the expenses of the county government, as well as of the state government, might be properly defrayed. As tending to support this view, we find that the Greater New York charter requires that there shall be a separate assessment roll in each of the boroughs upon which the residents of the borough shall be assessed for their personal property. Section 894, c. 466, p. 380, Laws 1901. We also find in the same section a provision for transferring an assessment erroneously made in one borough against a resident of another to the appropriate assessment roll in the borough of his residence, but even this the Legislature recognized could not become a valid tax without a further notice and hearing. It is quite clear, therefore, I think, that, for the purpose of assessing trust property where the executors or other trustees reside in different boroughs, the assessments should be levied as if they lived in different tax districts, and were assessed by different boards of assessors. It follows, therefore, that the assessment sought to be reviewed is valid and regular, and the writ should have been quashed.

The order should therefore be reversed, with $50 costs and disbursements, and motion granted, with $10 costs.

PATTERSON and McLAUGHLIN, JJ., concur. INGRAHAM, J., dissents. O'BRIEN, P. J., dissents on opinion of LEVENTRITT, J.